IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-02771-PAB-STV

ESCOBAR, INC., a Puerto Rico corporation,

      Plaintiff,

v.

BARWEST GROUP, LLC, a Colorado limited liability company,
RYAN CHADWICK, an individual,
ESCOBAR SPIRITS, LLC, a Colorado limited liability company,
ESCOBAR ASPEN, an unknown entity, and
DOES 1 THROUGH 10,

      Defendants.

---

## ORDER

---

This matter is before the Court on Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss [Docket No. 10]. Plaintiff responded, Docket No. 15, and defendants replied. Docket No. 16.

## I. BACKGROUND[1]

Plaintiff's purpose is to "promote, enhance, disseminate[,] and protect [Pablo] Escobar's cultural and intellectual works and to preserve ad protect the integrity of his life, name[,] and image." Docket No. 1 at 5, ¶ 21. Pablo Escobar died on December 2, 1993, and plaintiff has the "exclusive authority to manage and enforce the intellectual property rights arising from Pablo Escobar's personality right and any other intangible

---

[1] The facts are taken from plaintiff's complaint [Docket No. 1] and are presumed to be true for the purposes of this order.

rights." *Id.*, ¶ 22–23.  Plaintiff has invested time, effort, and money in developing and promoting its products and services under "names that consist of or include the word[s] PABLO ESCOBAR and ESCOBAR" (the "Escobar names") in the United States.  *Id.*, ¶¶ 24–25.  As a result, the Escobar names have "come to identify the [p]laintiff exclusively and uniquely" and represent "enormous goodwill."  *Id.*, ¶ 25.  Plaintiff also registered in California as "successor-in-interest to Pablo Escobar's postmortem right of publicity" under California Civil Code § 3344.1.  *Id.*, ¶ 26.

Defendants opened a nightclub in Aspen, Colorado under the name "Escobar Aspen" and have a logo that uses the name "Escobar" and an "image of Escobar's face."  *Id.* at 6, ¶ 27.  Defendants use their brand, the "image of Escobar," and "Escobar's name" to advertise and promote their nightclub on their website and social media accounts, and, on information and belief, have also "reproduced" the brand on apparel that they sell, advertise, and promote.  *Id.*, ¶¶ 28–30.  On information and belief, defendants have created a line of vodka called "Escobar Vodka," which has a logo that uses the name "Escobar" and an "image of Escobar's face," and which is advertised and promoted on defendants' website and social media accounts and sold at the nightclub.  *Id.*, ¶¶ 31–32.  Upon information and belief, defendants use Pablo Escobar's name and likeness to market the Escobar Aspen, Escobar apparel, and Escobar Vodka brands.  *Id.*, ¶ 33.  They also advertise, promote, and offer these brands to "confuse[s] consumers into believing that they are the official Pablo Escobar brand" or are licensed by plaintiff.  *Id.*, ¶¶ 33–34.

Defendants, however, are not associated with plaintiff and have not been

authorized or licensed by plaintiff to use the name or likeness of Pablo Escobar in connection with their businesses. *Id.* at 6–7, ¶ 35. Rather, upon information and belief, defendants selected and used Pablo Escobar's name and likeness with actual and constructive knowledge of plaintiff's ownership of and exclusive rights to use the name and likeness of Pablo Escobar with the intent to trade off of the significant reputation of Pablo Escobar and the goodwill symbolized by his name and image, which has continued to grow over the years. *Id.* at 7, ¶¶ 36–37. Upon information and belief, defendants know the goodwill associated with Pablo Escobar's name and image and have benefitted by acting intentionally, wilfully, and wantonly. *Id.*, ¶¶ 40–41.

Defendants' unauthorized use of Pablo Escobar's name and likeness for commercial purposes in connection with the nightclub, vodka, and apparel brands is damaging "Escobar."[2] *Id.*, ¶ 42. The consuming public is likely to be confused, deceived, and misled into believing that plaintiff offered, licensed, authorized, endorsed, or sponsored the use of Pablo Escobar's name and likeness to defendants, and the goodwill that plaintiff has built in the name, image, and likeness of Pablo Escobar is at risk by defendants' appropriation. *Id.*, ¶ 43. This is because defendants have acted without authorization and have "unfairly and unlawfully wrest[ed] from [plaintiff] control over Pablo Escobar's name, image[,] and likeness," which has resulted in plaintiff's "extremely valuable" reputation being "irreparably damaged." *Id.* at 7–8, ¶¶ 43–45. Defendants also have actual knowledge that their conduct is "unlawful," as plaintiff has

---

[2] The complaint is not clear to whom "Escobar" refers in this allegation. Plaintiff, which is named "Escobar, Inc.," refers to itself as "Escobar Holdings" and as "plaintiff." *See id.* at 2, ¶ 2. It does not, however, define "Escobar."

informed defendant Ryan Chadwick of plaintiff's "well-established rights" and has asked Mr. Chadwick to cease using the name, image, or likeliness of Pablo Escobar in any of its brands, yet Mr. Chadwick has not agreed to do so.  *Id.* at 8, ¶ 46.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  However, a plaintiff still must provide "supporting factual averments" with his allegations.  *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)).  Otherwise, the Court need not accept conclusory allegations.  *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is

4

entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

Plaintiff brings five claims for relief, (1) violation of the "common right to publicity" under California Code § 3344(a) and Colorado common law, (2) violation of the "right of publicity," (3) copyright infringement under 17 U.S.C. § 501, (4) unfair competition under Colorado common law, and (5) accounting under 17 U.S.C. § 504.  Docket No. 1 at 8–13.

## III.  ANALYSIS

### A.  Federal Law Claims

The Court first considers plaintiff's federal law claims for copyright infringement and accounting.

#### 1.  Copyright Infringement – Plaintiff's Third Claim

Plaintiff alleges that defendants have used an original work of art painted by Robert de Jesús Escobar Gaviria ("Robert Escobar"), that is "displayed on all of

[d]efendants' ventures." Docket No. 1 at 11, ¶ 69. Plaintiff refers to this artwork as the "Pablo Artwork." *Id.* Plaintiff claims that the Pablo Artwork was created outside the United States and does not qualify as "United States work" for purposes of the Copyright Act (the "Act") and that it is an original and creative work that the Act protects. *Id.*, ¶¶ 70–71. Plaintiff alleges that (1) it informed defendants of the infringement, (2) defendants have ignored "the pleads [sic] and continue to infringe," (3) defendants had access to the Pablo Artwork, and (4) defendants have knowingly, willfully, and in bad faith violated Sections 106 and 501 of the Act. *Id.* at 11–12, ¶¶ 73, 75.

Under the Act, Congress granted copyright owners specific and exclusive rights. *See* 17 U.S.C. § 106. The list of exclusive rights is exhaustive – "[i]f a right is not 'specified,' then it is not one of the exclusive rights granted by Congress." *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 886–87 (9th Cir. 2005). However, "exclusive rights may be chopped up and owned separately, and each separate owner of a subdivided exclusive right may sue to enforce that owned portion of an exclusive right, no matter how small." *Id.* at 887.

Section 501(b) of the Act defines under what circumstances copyright owners have standing to bring a suit against infringing parties. For a plaintiff to assert a claim for copyright infringement, it must be (1) the "legal or beneficial owner of an exclusive right under a copyright" and (2) entitled "to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Therefore, to state a claim for copyright infringement, plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that

are original." *Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012).  The owner of a valid copyright "is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it."  17 U.S.C. § 501(b).

Section 411(a) of the Act provides, among other things, that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a).  In *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010), the Supreme Court held that § 411(a) imposed a non-jurisdictional precondition – copyright registration – that plaintiffs must satisfy before filing copyright infringement claims.  *Id.* at 157.  However, the Supreme Court declined to address "whether § 411(a)'s registration requirement is a mandatory precondition to suit" that district courts may enforce *sua sponte* by dismissing copyright infringement claims involving unregistered works.  *Id.* at 171.

The Tenth Circuit has held that a plaintiff can only bring a suit for copyright infringement after "a copyright is registered, and such registration occurs when the Copyright Office approves the application."  *La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1203–04 (10th Cir. 2005), *abrogated on other grounds by Reed Elsevier*, 559 U.S. at 166–68.  The Tenth Circuit rejected the proposition that a work is registered within the meaning of § 411(a) upon submission of a copyright application and found that the statute requires "actual registration by the Register of Copyrights."  *Id.* at 1205.

Defendants argue that plaintiff failed to assert sufficient facts to sustain a copyright claim because, along with failing to attach the allegedly copyrighted work, plaintiff failed to "allege sufficient details, or chain-of-title, with specificity." Docket No. 10 at 11. As a result, defendants argue, it is impossible to determine whether the Pablo Artwork enjoys any copyright protections or resembles the image used by defendants. *Id.* Finally, defendants argue that Robert Escobar is not the plaintiff, and plaintiff has failed to allege sufficient facts to show that interests in the allegedly copyrighted work were transferred to plaintiff. *Id.* at 11–12.

While plaintiff did not attach the Pablo Artwork to the complaint, plaintiff provided it in response to defendants' motion. *See* Docket No. 15-1 at 4. "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). It is not clear that the artwork attached to plaintiff's response is an indisputably authentic representation of the Pablo Artwork, however, and plaintiff provides no argument that the Court should consider it to be indisputably authentic.

The Court need not decide this issue, however, because even if the Court took notice of the artwork attached to plaintiff's response and considered it to be indisputably authentic, the Court would still find that plaintiff failed to plead a plausible copyright infringement claim. While plaintiff alleges that the Pablo Artwork was first created outside the United States, *see* Docket No. 1 at 11, ¶ 70, such that the registration requirements of Section 411(a) of the Act do not apply, the Court finds plaintiff's

8

allegations are not well-pled because they are conclusory.  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  However, a plaintiff still must provide "supporting factual averments" with his allegations.  *Cory*, 583 F.3d at 1244 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)).

Plaintiff provides no "supporting factual averments" regarding where the Pablo Artwork was created that could support an allegation that it is a non-United States work, exempt from registration under Section 411, and for which plaintiff may bring an infringement action.  Plaintiff alleges only that "[t]he Pablo Artwork was first created outside the United States" and that it was painted by Robert Escobar in 1999 and published on December 1, 2004.  Docket No. 1 at 11, ¶¶ 69–70.  These allegations show that it is possible that the Pablo Artwork did not need to be registered and that Section 411's requirements do not apply, but this is not enough to state a plausible claim, and the Court need not accept plaintiff's conclusory allegations.  *See Moffet*, 291 F.3d at 1232; *see also Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."); *Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).

Even assuming that the Pablo Artwork is a non-United States work and that

registration was not required to bring an infringement action, plaintiff has failed to plausibly allege facts that show ownership of the copyright, which is needed to bring a copyright infringement action. *See Blehm*, 702 F.3d at 1199. Plaintiff claims in response that Robert Escobar is the founder of Escobar, Inc., *see* Docket No. 15 at 5, yet this allegation is not in the complaint, and the Court will not consider allegations that appear for the first time in plaintiffs' response. *See Mattson v. Chertoff*, No. 07-cv-02432-PAB-BNB, 2009 WL 564289, *4 n.3 (D. Colo. Mar. 5, 2009) ("The plaintiff attempts to assert an additional claim for a 'matter' 'that occurred on March 1, 2008.' I will not address claims raised for the first time in a brief opposing a dispositive motion." (citation omitted)); *see also In re Qwest Comm'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (holding that "plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss"). Because plaintiff has failed to plausibly plead copyright infringement, the Court will dismiss plaintiff's third claim.

### 2. Accounting – Plaintiff's Fifth Claim

Plaintiff argues that it is entitled to recover any and all profits of defendants that are attributable to the wrongful conduct, as well as actual or statutory damages, pursuant to 17 U.S.C. § 504. Docket No. 1 at 12, ¶¶ 84–85. Plaintiff alleges that the amount of money due cannot be ascertained by plaintiff without a detailed accounting by defendants of the precise number of units of infringing material advertised, marketed, offered, or distributed by defendants. *Id.* at 13, ¶ 86. Defendants insist that plaintiff's claim for an accounting, which cites Section 504 of the Copyright Act, is

preempted by the Copyright Act.  Docket No. 10 at 13.  In reply, plaintiff argues that its accounting claim is not preempted because it is not based solely on Section 504 and plaintiff will need to conduct an accounting under its state-law claims.  Docket No. 16 at 6.

A request for an accounting is not a separate claim for relief.  Rather, it is a remedy.  *See, e.g.*, *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985); *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972); *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076–77 (8th Cir. 2016).  An "accounting for profits," also referred to as an "accounting," as well as disgorgement of profits, is a form of restitution.  *See, e.g.*, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 n.2 (2002)  (discussing accounting in ERISA context; "an accounting for profits [is] a form of equitable restitution."); *Tull v. United States*, 481 U.S. 412, 424 (1987) ("An action for disgorgement of improper profits . . . is a remedy only for restitution.").  An accounting or disgorgement of profits allows the plaintiff to "recover a judgment for the profits due from use of his property" and thus "holds the defendant liable for his profits, not for damages."  *Teets v. Great-W. Life & Annuity Ins. Co.*, 921 F.3d 1200, 1225 (10th Cir. 2019) (citation omitted).  As with other equitable remedies, the remedy of an accounting is not cognizable when there is an adequate remedy at law.  *See Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.* (*Haynes I*), 51 F. App'x 786, 800 (10th Cir. 2002) (unpublished).

The Court finds that plaintiff has not sufficiently explained why there is no adequate remedy at law, i.e, damages, that would entitle it to such equitable relief.

11

Plaintiff states that "[t]he amount of money due from [d]efendants to [p]laintiff is unknown to [p]laintiff and cannot be ascertained without a detailed accounting by [d]efendants of the precise number of units of infringing material advertised, marketed, offered[,] or distributed by [d]efendants."  Docket No. 1 at 13, ¶ 86.  But plaintiff provides no support for this statement and requests damages of "not less than $5,000,000.00" and a trial by jury, indicating plaintiff seeks legal, rather than equitable, relief.  *See* Docket No. 1 at 14–15.  "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law," and "the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them."  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) (citation omitted); *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.* (*Haynes II*), 573 F.3d 947, 964–65 (10th Cir. 2009).  Plaintiff's request for $5,000,000.00 in damages indicates that it has approximated what it believes it is due and that it may not believe the accounts of the parties are so complicated as to be beyond the abilities of a jury.  The Court will dismiss plaintiff's fifth claim because it does not consider plaintiff's arguments that it is entitled to an accounting to be a separate claim for relief and because plaintiff has made no showing that it is entitled to the equitable remedy of accounting.

### B.  State-Law Claims

Having dismissed plaintiff's federal-law claims, the Court must ensure that it has jurisdiction to hear plaintiff's state-law claims.  In every case and at every stage of the

proceeding, a federal court must satisfy itself as to its own jurisdiction, even if doing so requires *sua sponte* action.  *See Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1297 (10th Cir. 1980).  Absent an assurance that jurisdiction exists, a court may not proceed in a case.  *See Cunningham v. BHP Petroleum Gr. Brit. PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005).  Therefore, before the Court may consider plaintiff's state-law claims, the Court must determine that it has jurisdiction to hear them.  Plaintiff alleges that the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.  Docket No. 1 at 4, ¶¶ 16–17.

Pursuant to Section 1332, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  "For purposes of federal diversity jurisdiction, an individual's state citizenship is equivalent to domicile."  *Smith v. Cummings*, 445 F.3d 1254, 1259 (10th Cir. 2006).  "To establish domicile in a particular state, a person must be physically present in the state and intend to remain there."  *Id.* at 1260.  The citizenship of a limited liability company is determined by the citizenship of all of its members.  *See Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015) ("[I]n determining the citizenship of an unincorporated association for purposes of diversity, federal courts must include all the entities' members.").  A corporation, however, "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  *See* 28 U.S.C. § 1332(c)(1).  A corporation incorporated in a foreign

country may still have its principal place of business in the United States.  *See Burge v. Sunrise Medical (US) LLC*, No. 13-cv-02215-PAB-MEH, 2013 WL 6467994, at *2 (D. Colo. Dec. 9, 2013) (citing *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.,* 20 F.3d 987, 990 (9th Cir. 1994)).  While, at the pleading stage, the Court takes as true all "well-pled (that is, plausible, conclusory, and non-speculative) facts," *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1070  (10th Cir. 2008), the Court finds that the allegations regarding the parties' citizenship are not well-pled.

Plaintiff alleges that it is a Puerto Rico corporation with a principal place of business at 324 South Beverly Drive, Unit 325, Beverly Hills, California 90212.  Docket No. 1 at 2, ¶ 2.  Defendants states, however, that the address that plaintiff alleged as its principal place of business is actually a UPS store.  Docket No. 10 at 7.  Defendant provide a screen-shot from a UPS website showing a map of the area and one of its locations at 324 South Beverly Drive.  Docket No. 10-1 at 5.[3]  Plaintiff does not dispute the accuracy of this screen-shot and explains that "many smaller businesses have moved away from utilizing physical office space . . . . Many modern businesses have a commercial address where they can receive official mail and then use virtual offices to

---

[3]  As with the Pablo Artwork, the Court may consider matters subject to judicial notice at the motion to dismiss stage without converting the motion to dismiss into one for summary judgment.  *See Tal v. Hogan*, 453 F.3d 1244, 1264–65 n.24 (10th Cir. 2006).  The Court may "take judicial notice of a Google map and satellite image as a source whose accuracy cannot reasonably be questioned."  *Pahls v. Thomas*, 718 F.3d 1210, 1216 n.1 (10th Cir. 2013) (internal quotation marks and alterations omitted).  The Court may also take judicial notice of a screen-shot from a website.  As noted by the Tenth Circuit, "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web."  *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (taking judicial notice of earnings information on Northrop Grumman's website); *New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1257 (D.N.M. 2020).

14

hold meetings."  Docket No. 15 at 3–4.  A P.O. box, however, may not serve as a principal place of business.  *See Burge v. Sunrise Med. (US) LLC*, No. 13-cv-02215-PAB-MEH, 2013 WL 6467994, at *3 (D. Colo. Dec. 9, 2013) (citing *Spencer v. Pocono Int'l Raceway, Inc.*, 2012 WL 2050168, at *2 (M.D. Pa. June 6, 2012) ("a P.O. box may not serve as a principal place of business")).  Because plaintiff has not provided its principal place of business, the Court is unable to determine plaintiff's citizenship.

As to defendants BarWest Group, LLC and Escobar Spirits, LLC, plaintiff alleges that both are an LLCs "organized and existing under the laws of the State of Colorado" with their "principal place[s] of business in the State of Colorado."  Docket No. 1 at 2, ¶¶ 4–5.  Plaintiff concludes that both of these defendants are thus Colorado citizens. *Id.*  As stated above, however, the citizenship of an LLC is determined by the citizenship of all of its members.  *See Siloam Springs*, 781 F.3d at 1237–38. Allegations regarding the principal place of business or state of incorporation of an LLC are therefore irrelevant.  Because plaintiff has identified none of the members or their citizenship, plaintiff's allegations with respect to the citizenship of defendants BarWest Group, LLC and Escobar Spirits, LLC are not well-pled.  *See Den 8888, LLC v. Navajo Express, Inc.*, No. 21-cv-00321-STV, 2021 WL 463623, at *3 (D. Colo. Feb. 9, 2021); *U.S. Advisor, LLC v. Berkshire Prop. Advisors, LLC*, No. 09-cv-00697-PAB-CBS, 2009 WL 2055206, at *2 (D. Colo. July 10, 2009) (citing *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 347 (7th Cir. 2006)); *Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F. App'x 765, 768 (5th Cir. 2015) (unpublished) ("[W]e have observed that the appropriate tests for citizenship involve tracing [entities'] citizenships down the various organizational

layers where necessary." (internal citation omitted)); *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1092 (11th Cir. 2010) (remanding case in which party invoking the court's diversity jurisdiction did not disclose the identity and citizenship of each member of an unincorporated entity); *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) ("When diversity jurisdiction is invoked in a case in which a limited liability company is a party, the court needs to know the citizenship of each member of the company.  And because a member of a limited liability company may itself have multiple members – and thus may itself have multiple citizenships – the federal court needs to know the citizenship of each 'sub-member' as well."); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] party must list the citizenships of all the members of the limited liability company."); *Prospect Funding Holdings, LLC v. Fennell*, 2015 WL 4477120, at *2 (S.D.N.Y. July 15, 2015) (collecting New York district court decisions holding that a limited liability company must "plead facts establishing their citizenship including, . . . the identity and citizenship of their members" in order to invoke diversity jurisdiction).  A negative allegation of citizenship is not sufficient.  *See, e.g.*, *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 125–26 (1st Cir. 2011) (holding that allegations of LLC's citizenship in the negative are insufficient to establish diversity jurisdiction); *see also* 13E Charles A. Wright et al., Fed. Prac. & Proc. § 3611 (3d ed. 2009) (updated April 2021) ("Neither is a negative statement that a party is not a citizen of a particular state usually sufficient.").

Plaintiff's allegations concerning the citizenship of Escobar Aspen are also not

well-pled.  Plaintiff states that it "is informed and believes that" Escobar Aspen "is an unknown entity, whose principal place of business is located at 426 E. Hyman Ave., Aspen, CO 81611."  Docket No. 1 at 3, ¶ 6.  Plaintiff continues, "Escobar Aspen was an unknown entity operating in the State of Colorado and with its principal place of business in the State of Colorado; it is, thus, a citizen of Colorado."  *Id.*  Plaintiff, however, has not identified what type of business entity Escobar Aspen is.  This information is critical to the Court's jurisdictional analysis because, as the Court has explained, the citizenship of different sorts of business entities is determined differently. *See Herman v. PBIA & Co.*, No. 19-cv-00584-PAB, 2019 WL 1594253, at *2 (D. Colo. Apr. 15, 2019).  As a result, the Court is unable to determine Escobar Aspen's citizenship.

Finally, plaintiff's allegations regarding the citizenship of Mr. Chadwick are also not well-pled.  Plaintiff alleges that he is a resident of New York who also maintains a residence in Colorado.  Docket No. 1 at 3, ¶ 7.  Residency, however, is not synonymous with domicile, *see Miss. Band of  Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another.") (citations omitted)), and only the latter is determinative of a party's citizenship.  *See Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972) ("[A]llegations of mere 'residence' may not be equated with 'citizenship' for the purposes of establishing diversity.").  "To establish domicile in a particular state, a person must be physically present in the state and intend to remain there."  *Smith*, 445 F.3d at 1260 (citing *Keys Youth Servs., Inc. v. Olathe*, 248 F.3d 1267, 1272 (10th

17

Cir. 2001)).  Courts are to consider the "totality of the circumstances" to determine a party's domicile.  *Middleton v. Stephenson*, 749 F.3d 1197, 1200–01 (10th Cir. 2014); *cf. Dumas v. Warner Literary Grp., LLC*, No. 16-cv- 00518-RM-NYW, 2016 WL 10879185, at *2 (D. Colo. Apr. 29, 2016) (stating that courts consider a number of factors in determining a party's citizenship, including "voter registration and voting practices.").

Finally, plaintiff has failed to make a good-faith allegation as to the citizenship of the substantive Doe defendants.  Plaintiff simply names as defendants "Does 1 through 10" and states that they are responsible "in some manner" or are "legally liable for the actions, events, transactions[,] and circumstances alleged herein."  Docket No. 1 at 3, ¶ 8.  Plaintiff continues, "[t]he true names and capacities, whether individual, corporate, associate[,] or otherwise, of [d]efendants Does 1 through 10, inclusive, are presently unknown to [p]laintiff."  *Id.*  Because this says nothing of the Does' citizenship, the Court is unable to determine whether complete diversity is established and, thus, whether it has jurisdiction.  *See United Fin. Cas. Co. v. Lapp*, No. 12-cv-00432-MSK-MEH, 2013 WL 1191392, at *2 (D. Colo. Mar. 21, 2013) ("this Court is inclined to defer to the 'general rule' that 'the diverse citizenship of the fictitious defendants must be established by the plaintiff in order to continue a federal court action'" (quoting Wright, Miller et al., *Fed. Prac. & Proc.*, § 3642 (2009)); *see also Van de Grift v. Higgins*, 757 F. Supp. 2d 1139, 1141 (D. Utah 2010).

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss [Docket No. 10] is **GRANTED in part**.  It is further

**ORDERED** that plaintiff's third and fifth claims for relief are **DISMISSED without prejudice**.  It is further

**ORDERED** that, because the allegations are presently insufficient to allow the Court to determine whether it has jurisdiction, *see United States ex rel. General Rock & Sand Corp. v. Chuska Dev. Corp.*, 55 F.3d 1491, 1495 (10th Cir. 1995) ("The party seeking the exercise of jurisdiction in his favor must allege in his pleading the facts essential to show jurisdiction." (quotations omitted)), on or before **October 13, 2021**, plaintiff shall show cause why this case should not be dismissed due to the Court's lack of subject matter jurisdiction.

DATED September 22, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge